Good morning, your honors. My name is Scott Quinlan. I represent the appellant Jason Way, Douglas Jason Way. There are two classes. Well, to begin with, if I may, I'd like to reserve five minutes. But there are two classes of evidentiary error that this case presents, among other issues. The first is those dealing with exclusion of all evidence relating to state law crimes and its effect on the defense. And the second group of errors that we are asserting is those errors that dealt with expert witness testimony, both Dr. Barrier and also the government's experts. As to the first issue, evidence of state law compliance was excluded on motion of the government on day five of the trial after they had put on evidence of state law seizures. And the seizures that they put on the evidence of were state law seizures, we contended. The seizure policy that they put in evidence was a seizure policy pertaining to state's laws. It had nothing to do with any federal law or whether or not something was controlled under the federal law or prohibited. And during the argument on June 26, I specifically told the court, I said, well, they've already put in evidence of shipments being seized, but they were not seized under federal law. They were seized under state law. And to allow them to put that evidence on without the explanation is misleading. It's misleading. I mean, they have evidence that shipments were seized, okay? And to just leave it there without the explanation that they were seized pursuant to such and such a state, it's misleading as to the purpose that they were seized. And you can bet that they're going to argue that he had knowledge of the federal law because it was seized under federal law or something like that. And that's exactly what happened in this case. During Ms. Escobar's rebuttal closing argument, she said at ER 734, and there's a lot of evidence of seizures in this case, a lot of evidence. There were seizures to up and smoke in January of 2013. There was an email relating to seizures of Mike's MWI. You heard from Mike Sohani testify. He's from Texas. He was a big distributor. He was a big buyer of ZenBio products. There was an email relating to the seizures of product intended for Brothers Boutique and for Real Deal. You heard from Rachel Templeton that these seizures kept escalating and they didn't get their product back. Knowledge that their product is subject to seizure by law enforcement is strong circumstantial evidence that the defendant knew that 5-FUR-144 was a controlled substance analog. We were not allowed to rebut that case. We had witnesses for the defense. And so what would that rebuttal have been? What would your witnesses have said? Okay. They would have said that these seizures, so far as they knew, pertained to seizures under various states' laws, that different states had different laws that regulated substances like this, that under some states' laws it was legal and under other states' laws it was not. And the emails that were ordered, excluded, and redacted, those emails corroborated what I'm telling you, is that the sales staff was kept up to date on what different states' positions were. If it was risky or questionable or illegal, they were directed, and it's in the email, they were directed not to sell to those states. And so they only sold in states where it was lawful. That's so far as they knew. An example of some of the testimony that we were not allowed to develop was Rachel Templeton. And she testified on day 12 of the trial. She's in document 757, and I'm looking at pages starting 2341. And she testified, during your tenure at Zensense and ZenBio, were any products seized by law enforcement? She says yes. Was there a general pattern or was there an increase of any sort during the time while you were there? An increase in seizures? Yes. Yes, she says. And then she goes on and she says, On or about January 25, 2013, did you come in contact with former DEA Special Agent Claude Cozy? Yes, I did. How did you come in contact with him? The person I was dating at the time had concerns about the work that I was doing and had made contact with the DEA. Did you meet with Cozy? I did. On or about January 25, 2013? Yes, I did. Did he tell you anything about the legality of what you were doing? Yes, he did. What did he tell you? He very clearly stated that what I was selling and what I was doing was illegal. As a result, what did you do? I quit my job, told them I wasn't coming back the next day. And did you quit? I did. She knew about these seizures, which she had testified to and which the government had cited in its rebuttal argument. But to her, they were seizures under state law, and as soon as DEA... But she's talking to a federal agent. Pardon me? She's talking to a DEA agent. That's what I'm getting at. When she talked to the federal agent who's telling her that it's illegal, she quit right then. And that supports what I'm saying, is that all of this excluded evidence went to the issue of their actions that they took, the seizure policy, warning people. All these actions were taken in relation to state laws, and they had nothing to do with whether or not they believed it was federally controlled or was an analog. That issue is noted in McFadden at page, I think it's 2306, footnote number three, where they said it's up to the jury to determine in those kinds of cases whether or not the defendant knew that it was a seizure under federal law or under some state's laws. It was cited in the Dermott case that I cited to you, where they're talking about the proper instructions to the jury. It was cited in the unpublished case, United States versus Bay, where they're talking about whether or not the error was prejudicial. And the defendant in that case pointed out that, yes, he had said that such and such substance, he thought it was an analog, but that related to an analog under state's laws. And the appellate court said, well, we're going to reverse, and that's not the kind of thing that we consider in a harmless error analysis. So this defense that we had, and we had e-mails, we had witnesses who were going to testify that Burton Ritchie would have testified to this. If I had been allowed to ask Rachel Templeman, I'm sure she would have admitted it, that all these seizures were under state's laws, and the first she heard about any federal operating it, she quit that day. And we were not allowed to put this on, and we were not allowed to rebut the government's circumstantial evidence case, which was, as I just quoted, knowledge of seizures is knowledge of federal analog status. That's not true, not in this case anyway. Knowledge of seizures was knowledge of state prohibitions. Were there any federal seizures? Pardon me? Were there any federal seizures? There was a seizure of product in Nevada before my client came along by the DEA, and that was in bulk. There was no federal seizures in the record that I'm aware of. There's no federal seizures of retail product, product that's been packaged and shipped to customers and to which the customer return policy applies. The only product that was seized was from Burton Ritchie's drying facility that he had in Nevada, and then he would take that bulk product and ship it to Florida where it was weighed and packaged for distribution. My client was not working at that time. He testified that he was not told by Burton Ritchie about that seizure. He didn't know about it. And Burton testified that he thought that that seizure related to a different drug, AM-2201, which he had quit using, and he himself, and it's in the record because Agent Cozy corroborated it, he called up and got a hold of Agent Cozy and met with him the next day at his Florida facility, and he gave him samples of the product. He told him that it had, he called it 5-4-1-4-4, but he told him that it had XLR-11 in it, gave him products of the sample in its packaging, took him on a tour of the packaging facility, and he told DEA Special Agent Cozy, if I'm doing anything illegal, you tell me, and I'll shut it down right now. Agent Cozy testified to that, and so did Mr. Ritchie. Now, Agent Cozy told Rachel Templeman that she was doing something illegal, and she quit right then. And what happened in this case is that Mr. Ritchie told my client, Jason, of his conversation with Mr. Cozy, and, I mean, nobody was arrested, and so he had no idea that this was any claimed analog or any claimed controlled substance under federal law. There were some ramifications from this, the biggest one of which was that the lawyer opinion from Mr. Dandar referenced all 50 states, the status of XLR-11 in all 50 states, and he would put on there legal, risky, illegal, depending upon what state it was. And when he got to Maine and the state that followed, I forget, they had no law, and so he said, default federal, and then he put legal. And what that meant to us, the defense was, was that he had opined that under federal law, XLR-11 was legal. Well, because that opinion referenced the way I'm saying it to you by referencing the absence of a state law, the judge ordered that to be redacted and excluded. And so all the state laws, and that in particular was ordered excluded, and all we were left with was Mr. Dandar's opinion on pending prospective legislation, but not his opinion on existing federal law. And that was a direct result of the exclusion of all reference to state laws. You know, there was quite a discovery dispute concerning Daubert, and there was a dispute concerning Dr. Arthur Barrier, the former DEA Forensic Science Division senior chemist. And in restricting the questions and testimony and evidence that we could elicit as to Dr. Barrier's former position, basically he was the go-to guy in forensic science on whether or not the chemical structure of a suspected analog was substantially similar to the controlled substance. And his role was to act as a consultant to the DRE division of the DEA, which made the ultimate determination. And what happened was that the court ordered us not to go anywhere near Dr. Barrier's prior work. And so I was not allowed to—well, the court would not accept my offer of proof that Dr. Barrier would testify that he was originally the go-to guy on structural similarity opinions. We made an offer of proof through Dr. Barrier outside the presence of the jury at Volume 2 ER 542 through 544, wherein he said he was an expert at forensic science who was tasked with rendering opinions asked of forensic science by the DRE division. And Dr. Barrier explained his role outside the presence of the jury, and the court said, that is not where we are going. And I couldn't even get near Dr. Barrier's experience and his prior qualifications and his prior job responsibilities of being the person at forensic science that the second opinion would come from. Can I go back to your argument about excluding evidence that the seizures were state law seizures? I mean, the government does not have to show by direct evidence knowledge or should have had knowledge. It can do it by circumstantial evidence. What was the state of the circumstantial evidence other than the state seizures that your defendant knew or should have known? Okay. I have cataloged it in my reply brief summary of the disputed facts. But in a nutshell— And the government, of course, will give us to it, too. But I want to give you the first shot at what's the circumstantial evidence that was cognizable appropriately. Sure. Appropriately cognizable evidence would have been that the government believed that Mr. Way was being evasive when he said to the agent who interviewed him at his home that he was in the business of selling potpourri and that— that there was a substance that was seized. And they talked about—he talked about that with Mr. Notley, who owned the company at the time. And they made arrangements to ship it through an alternate carrier such as FedEx or something. But left out of the government's brief was that that substance was not seized by federal authorities. It was initially seized by the California Department of Agriculture who brought in the Fresno County Sheriff. And the Fresno County Sheriff is the one that conducted the investigation. And it wasn't a federal seizure at all. And my client didn't think it was. The remaining things—what else? Well, you know what? Let's leave it to the government, and then you can respond. Maybe that's the better way to do it. Okay. If I may. Thank you. May it please the Court. My name is Karen Escobar, and I represent the United States. We request the Court affirm the judgment of conviction in this case. I'd first like to make a correction to our brief. I think at page 14 of our brief, we misstated the nature of Attorney Dandar, the letter that has been the subject of much talk in this case, a letter that was not even received by the defendant until well into his tenure at ZenBio. That was in mid-January that he received it. But in any event, page 14 in our brief, we stated that Mr. Dandar's letter did not offer an opinion on the legality of XLR-11. It did offer an opinion that it was legal. However, it was qualified in the letter. It stated this correspondence does not serve as a guide or opinion as to the safety or efficacy of the compounds mentioned, which was XLR-11 or 5-FUR-144, nor does it recommend them for human consumption. But that qualifier has nothing to do with legality. Well, the nor for human consumption does, Your Honor. That makes it if it- Dog food is legal but is not fit for human consumption. True, but we're talking about analogs, and if something meets the definition of an analog and is intended for human consumption, then it is treated as a Schedule I. Yeah, okay. So I think it- It's a pretty mild qualifier. Yeah. He does also indicate in the letter that the laws are constantly changing and that you should only rely upon this letter as of the date of the letter, which was way after many of these seizures occurred. But let's go back to that point because it strikes me as a valid point. These seem to be state seizures. The question is legality under federal law, and you're now telling me that the Dandar letter, which your brief says it did not offer any opinion regarding the legality drug at the federal level. Apparently it did. It did say it was legal under federal law. It did. Yeah. It did say it was legal. There were numerous- And what was the state of evidence in front of the court? Was the letter appropriately represented in federal court? Yes, it was. In the district court? Just reference to state laws was redacted, not federal law. And the letter- Sorry, say that again. I'm not sure I understood. So references to state law or Mr. Dandar's opinion regarding state laws on this particular analog, that was redacted. But the letter as received by the jury did say that Dandar said it was legal under federal law. Yes, Your Honor, and it's at ER Excerpt of Record 780. Again, it wasn't received until much later, and Mr. Way testified at trial that he wasn't there to do due diligence on compliance. That was at ER 597. Okay. So I want to get right to it. I'm hearing a lot of evidence was excluded that would have told the jury that all or most of the seizures in question were under state law, and whether it's legal or illegal under state law bears at most a tangential relationship to whether it's illegal under federal law. What evidence did you give to the jury that said it was- from which the jury could have concluded that it was illegal under federal law and that the defendant knew that? Besides the fact that there were seizures by DEA, there was a seizure- And what seizures by DEA were there? Seizure in Arizona of samples of the so-called potpourri that the defendant sent to a colleague, Zach Schneider, who was caught at a smoke shop. DEA was actually investigating DJ's smoke shop in Arizona. Mr. Schneider walked in to peddle these samples of potpourri, and the DEA agent ended up seizing those samples as well. These were samples of the defendant? Yes, that Mr. Way actually sent to Mr. Fleet to give to Zach Schneider. So what other evidence do we have? We have the seizure of product in Vegas. Mr. Ritchie testified at trial that he specifically told Mr. Way that DEA had seized product  And that was the beginning of when they decided to shift operations to California. Okay, so any other? Well, the 12-kilo seizure of pure XLR11 in Fresno was initially by Fresno County Sheriff's, but immediately they turned it over to the feds. In McFadden, the Supreme Court did talk about seizures as being relevant evidence, circumstantial evidence of knowledge. And they relied upon a case, it's U.S. v. Ali out of the Fourth Circuit, that it's a caught case, not an analog case. But those seizures in Ali were by state and local police officers. And in the case, again, that McFadden relied upon, Ali stated, the opinion stated, it's reasonable to presume that state and local police officers would be interested in enforcing not just state but federal law. Are you now quoting from McFadden? I'm sorry. From McFadden, Your Honor. Where are you in McFadden? So it's in the footnote. There's a footnote, I believe it's both 1 and 4 of McFadden, discuss the nature of circumstantial evidence that can be relied upon to establish the requisite knowledge element in an analog case. And it discusses seizures, evidence of seizures. Yeah, I've got it. There is no footnote 4. There is a footnote 3. 3 and 1, I believe it is. Yeah, okay, I've got it in front of me. I'll just read 3. Although the government must prove that a defendant knew the substance in question was a controlled substance under federal law, the government need not introduce direct evidence of such knowledge. As with prosecutions involving substances actually listed on the drug schedule, the government may offer circumstantial evidence of that knowledge. In such cases, it will be left to the trial of fact to determine whether the circumstantial evidence proved that the defendant knew the substance was a controlled substance under the CSA, as opposed to any other federal or state law. I'm not sure that helps you much. It refers to footnote 1, I believe, which also discusses the specific types of evidence that can be used to establish knowledge. And it refers to seizures, and in that footnote, refers to U.S. v. Ali, which involves seizures by state and local officers of COT. I'll just read the footnote. I don't see it. Court of Appeals have held that, as with most mens rea requirements, the government can prove the requisite mental state through either direct or circumstantial evidence. Direct evidence could include, for example, past arrests. Circumstantial evidence could include, for example, a defendant's concealment of his activities, evasive behavior with respect to law enforcement, knowledge that a particular substance produces a high similar to that produced by controlled substances, knowledge that a particular substance is subject to seizure at customs. It doesn't talk about knowledge or lack of knowledge with respect to state law. It cites Ali, which does discuss seizures of COT by state and locals, and not federal. In any event, the MWI, Mr. What would have been the harm to have admitted the seizures under state law, in your view? I believe it was irrelevant, just as it is irrelevant in the marijuana cases. In the Ninth Circuit, this Court has issued several opinions in that context. California medical marijuana law, California law, is irrelevant in the context of a federal marijuana prosecution. That's Gilmore, Morales, Rosenbaum. But those are the inverse. Those are saying, I'm innocent under federal law because I'm innocent under state law. This question here is, guilty under state law doesn't mean guilty under federal law. I mean, that's a different question. Well, Your Honor, Mr. Wade testified that he believed he was doing everything legally. It's our position that the jury rejected that position, and it's a credibility issue. The state law, again, there was evidence presented at trial that the states work with the feds. There was no testimony. To the extent that you're – I mean, I totally agree with you as to the irrelevance of state law. I mean, what's illegal under federal law is illegal under federal law, whether it's illegal or legal under state law. I totally get that. But the argument, as I understand it, on the other side is that you kept introducing evidence of seizures that were – the seizures under state law, and you were encouraging the jury to think that those were seizures under federal law, and that should have put him on notice that he was violating federal law. That's the argument. Understood. So why – what would have been the harm for you to allow the clarification that said, well, here were seizures under federal law, Arizona and Las Vegas, and then maybe that earlier one, and all the other seizures were under state law, and the fact that it was a seizure under state law, he then could have argued, well, yeah, it was illegal under state law, but that doesn't mean it's illegal under federal law. You prevented him from making that argument. Why? Again, we believe it is irrelevant. It's irrelevant until you start introducing the state seizures and then suggesting to the jury that that contributes to his knowledge that they're illegal under federal law. It's totally irrelevant until you do that. The – again, Mr. Way's position was that his job was not to do due diligence with respect to compliance. He said his testimony was that he just kept everything in place. He relied upon what Mr. Ritchie, the former owner, had indicated, that everything was legal. State law was not really at play in the case. The evidence of the seizure, there was no testimony. It wasn't at play in the case until you started introducing evidence of state law seizures without saying this is illegal under state law, these are not – they were not illegal under federal law. Seizures by law enforcement. Right, and you didn't differentiate, and you didn't allow him to differentiate. Well, the only case that the defense has relied upon really that's applicable is McCarr, but it's distinguishable. And in that case, it was the Tenth Circuit case written by Justice Gorsuch that's distinguished in Galecki, which was cited in our 28-J letter. Galecki is related to this case. Galecki and Ritchie were partners and co-conspirators of the defendant. In Galecki, the court decided, the Fourth Circuit decided that McCarr was not relevant. Customers, retailers wanted to get their product tested. They didn't know what was in the product. They wanted to determine if the product was legal under state law. In our case, the defendants were submitting product, the pure substance, to this AI biotech lab to get does-contain reports and does-not-contain reports. And those reports specifically referenced federal law, not state law. It referenced the Synthetic Drug Abuse Prevention Act, and this is noted in each of these does-contain and does-not-contain reports. The does-not-contain reports ended up going to the customers, while the defendants kept at the manufacturing lab the does-contain reports, which showed that the product tested positive for XLR11. So there was no reference to state law in submitting those samples for testing. They were not asking, does this comply with state law? The question was, did this comply with federal law? No, there's more circumstantial evidence on your side. Yes, yes. So McCarr wanted to determine the retailers who didn't know what was in the product, wanted to know whether the product was legal under state law. Here, our defendants knew what was in it. They knew specifically from the lab tests, and the defendant ordered XLR11 from the broker, large quantities of it. It's distinguishable. McCarr is the only authority that he decided with respect to the state law. Again, we do refer to the marijuana cases in the context of relevance. Unless your Honor has further questions with respect to state seizures. I do have one other federal seizure was Mike Sohani, mentioned by Mr. Quinlan. Mike Sohani, the owner of that company that was purchasing large quantities, one of the bigger customers of ZenSense and ZenBio, he testified at trial. Those seizures were by DEA. Those seizures were early on, in October or so of 2012. In fact- And here I'm speaking only for myself. We don't conference on these cases until after argument, and I'm inclined to think that I will affirm, but I have to say that I would feel much more comfortable about that if you had allowed the defendant to put in the evidence that he wanted to put in and then let the jury make of it what it would, because it was evidence favorable to the defendant, and you somewhat misled the jury by saying it's law enforcement without allowing differentiation between federal and state law. I don't like that much. I understand, but- That was unfair taking advantage. But the issue was not whether this violated state law. Well, of course it wasn't, but by introducing evidence of seizures under state law without allowing him to say they were seizures under state law, you allowed the jury to think that they might have been seizures under federal law. Apart from that, Your Honor, there was overwhelming evidence- I understand that, too, but I don't like the tactic. I understand, Your Honor, and I do defer to your sense of fairness. But in this particular case, even Judge Droz said it was a unique case. There were many novel issues. But that degree of confidence in the evidence of knowledge about federal, you should have let it come in and just let the jury decide what it was going to decide. I respectfully disagree. I don't think Judge Droz abuses discretion in excluding it. That's a different question. I understand. I would just like to briefly touch upon, because my time is running out, just this threshold issue of the pleading. Mr. Quinlan hasn't addressed it, but I think it's important. He talks a lot about and did in the district court about the use of disjunctive language, and it's our position that the disjunctive language here did not connect to separate offenses. It's important to distinguish between offenses and elements, and the disjunctive language here applied to the means of committing the offenses. There was no use of disjunctive language to combine two different offenses, and because of that, the indictment was sufficient. The grand jury found, based on the elements, that the crimes charged were committed. The purpose of the indictment is to provide notice of the crimes. The defendant had notice of the crimes charged. He didn't contest the sufficiency of the indictment until about three or four years after the original charge, and ultimately the jury at trial made findings with respect to which drugs were involved, whether it was AM-2201 or XLR-11. Of the evidence of seizures that were introduced into evidence, how many were state seizures under state law, and how many were federal? That is difficult to say. Well, why is it difficult to say? Because there were many emails that were admitted that referenced seizures. There was this policy that they implemented, a Zenbio seizure policy, that was in existence when the defendant was working there, whereby it didn't matter whether there was a seizure by state or federal or local law enforcement officers. Zenbio's policy was to refund the customer one time. I think I'll ask the other side. They may be able to answer the question. You have a chance to answer it now, but if you can't answer it, you can't answer it. Your Honor, I can't tell you exactly. We had a handful of witnesses, law enforcement officers, who testified to seizures at trial, both federal and state. But there were emails, many emails that referred to multiple seizures. How about as to which there was direct testimony of seizures rather than simply references and emails? It was under 10. I can certainly tell you that. Under 10 what, state? No, no, total. Okay, I'm asking how many state, how many federal? Off the top of my head, I can count them. There was Vegas, and feds testified about that. There was MWI, which was Texas. A federal agent testified that that was his case. Was that his case, but that was at a state or federal seizure? Was that a federal seizure? That was a federal seizure. Arizona was a federal seizure. Nevada was a federal seizure. North Carolina was a state seizure. And we were not, that resulted in a state prosecution, which we didn't touch at all, and an arrest, and we didn't touch that at all. And I'm trying to remember if there are any other state seizures, well, besides the Fresno seizure, which started the federal investigation. Yeah, I bet if there are more state seizures, I'll hear about them. I'm sure you will, Your Honor. With that, I don't believe that there were any issues regarding discovery. I don't believe that the district court abused discretion. That was, Dr. Barrier had no opinion regarding XLR-11 when he worked at DEA. And my time is up. Thank you very much. Thank you. You've saved some time. Thank you very much. So how many state seizures? To my knowledge, outside of the Vegas seizure, which occurred before my client came along and was not for retail product, to my knowledge, none. No, I asked you how many state seizures. Oh, all of them. All of them were state seizures to my knowledge. And all is how many? Whatever they put on evidence of, it was my understanding that they were state seizures. And the reason that I say that, I'll give you a poor example. Counsel says Mike Sohani of MWI testified. He did testify, but they didn't ask him any questions about seizures. He said that he was a big retailer of my client's products, but they didn't ask him any questions about seizures. The Arizona sample I already addressed in my reply brief, and I explained how it was not a seizure at all. It was samples that Zack Schneider handed to the DEA agent, and then the DEA agent went to Detoxify's place of business and accused them of manufacturing it when they didn't. They manufacture purging products, if you will, that purges your system. And then the manager of Detoxify called my client and said, hey, look, you know, these guys from DEA showed up, and they wanted to know what this was, and I didn't know what it was. And that was the end of that. How do you get my knowledge, my client's knowledge, of federal seizures from that kind of evidence? You can't get there. None, even if you were to assume that there were some federal seizures, there's no evidence in the record that my client knew that. My client disputes the one seizure of the gross product in Vegas. He disputes knowledge of that. But there's no evidence whatsoever in the record that anyone claims that he knew of some other federal seizure. It's just not there. What they also did was, you know, Your Honor has sort of indicated to us your thoughts on this, but this is Sixth Amendment stuff. I mean, we're being precluded from calling witnesses. We're being precluded from asking witnesses lines of inquiry that help the defense. We're being precluded from offering corroborating e-mail. Lots of them. They're all excluded. E-mail that details how my client's been in contact with Mr. Dandar about North Carolina or some other state, and he's going to get back to the sales staff about that. All of these e-mails are excluded. And so we submit that this should be looked at under a harmless beyond a reasonable doubt standard, and we submit that under any standard. I mean, just the wholesale denial to us of the ability to present our case, and we think that that was prejudicial. Okay, thank you. Thank you very much. Thank you. Thank both sides for their helpful arguments. United States v. Way now submitted for decision. That concludes our arguments for this morning. I know we've got a lot of students here. We're going to conference, and then we'll come back out and talk to you. I don't quite know how long the conference will be, and I realize it's getting late. I don't know how much time you have. Until 2 o'clock, is that right? Until 2 o'clock. Until 2 o'clock. Well, we'll come back out after we conference. We'll come back out and talk to the students. In the meantime, if you'd like to hear from our law clerks, they'll tell you the real stuff. Okay, we're now on adjournment. Thank you. Thank you.
judges: W. Fletcher, Bade, Moskowitz